Mr. Justice Clayton,
delivered the opinion of the court.
Two questions are presented by this record, first, whether the property in dispute passed under the will of Fereby O’Sullivant, to the several legatees therein named; secondly, if it did, whether the limitations contained in said will are valid or void.
On the first point, it is insisted, that the property in dispute did not pass by virtue of the will of Mrs. O’Sullivant to Mary Newell, because the property did not belong to the testatrix, but to the children of her first husband, William Newell,'deceased, *67 of whom Mary was one. The answer sets up that the said William Newell died in September, 1789, in the state of South Carolina, having directed by his will that his property should remain in the possession of his wife, till the youngest child became thirteen years of age, and that it should then be equally divided between his children and his wife ; but that this will had after probate been burned and destroyed with the other records of the ordinary’s court. That by common consent of those interested, all the property was permitted to remain in her possession, until her death in 1813, when she assumed the right to dispose of it by her will. That as her will also directed an equal distribution of the property, and pursued the course directed by the will of their father, except that it gave particular slaves to each of the children by name, instead of providing for a general distribution, and except that it also contained ulterior limitations, not contained in the will of their father, the legatees by common consent, determined to execute the will of the mother, which was done. These facts were proven by the deposition of Thomas Newell, the father of Charles S. N. Newell the appellant, who was one of the executors of the will of his mother, and aided in carrying it into effect. Her will was proven in 1813, in South Carolina. The slaves in controversy were bequeathed by that will to Mary Newell, who received and held them until her death in 1838, when she bequeathed them to Charles S. N. Newell the appellant. She died unmarried and without issue. If the first point is in favor of the appellant, it will render a consideration of the second unnecessary.
The only proof on this point, is the deposition of Thomas Newell, the father of the appellant, and the executor of the will of Mrs. O’Sullivant. The father, whose will is set up, died in 1789 — the will has been destroyed, and was not produced. By that will, the property was to remain in possession of the mother, until the youngest child became 13 years of age; this would have been in 1802, if born at the death of the father; or at all events in 1803. The mother in fact retained the possession ten years longer. In 1813 she made a will, and disposed of the property in a mode different from the alleged disposition *68 made by the will of the father. Different in this, that she affected to impose limitations upon the estate,.whilst under his will, each took a fee; she set apart certain slaves to each, his will gave no such direction. The children must then all have been of age; they took the property as set apart to them by the mother’s will, and acquiesced in it. One of the executors, the present witness, carried the will into effect. Not a word was uttered in opposition to it. Each child held the portion thus received without complaint or objection, until the death of Mary Newell in 1838, full a quarter of a century. Then for the first time, the right of Mrs. O’Sullivant to make the disposition is questioned.
We will not say that a case could not be made out after this acquiescence, which would justify a disregard of this will. It is sufficient to say, that the testimony of a single witness, a boy of 16 or 17 years old when his father died, taken more than half a century afterwards, when he had carried the mother’s will into effect, and permitted his own rights to be bound by it, will not avail for such purpose.
This brings us to the consideration of the second question, whether the limitation in the will of Mrs. O’Sullivant is too remote or not. The clause of the will, under which the controversy arises, is as follows: “I give aud bequeath to my daughter, Mary, a negro wench named Cate and her child, Mary, also a negro boy named Daniel, to her and the heirs of her body, and the said Cate’s offspring during her life, should she die without an heir, her part to go to or be divided between all her brothers.”
This controversy must be decided according to the laws of South Carolina. There is a statute of that state abolishing entails, but none which defines the limits of executory devises, or furnishes a rule for their construction. Resort must therefore be had to the decisions of their highest court, for a rule by which to determine this cause.
Their decisions are not free from conflict and confusion. We shall not attempt to go over them all. The earlier cases held limitations to be too remote, which those of a subsequent date *69 sustain, as falling within legitimate bounds. See Guerny v. Vernon, 1 N. & McC. 69, decided in 1818, and Henry v. Felder, 2 McC. Ch. 333, decided in 1827, in which the limitations were held to be void. The terms very nearly resembled those in the case before us. In Cordes v. Ardrian, 1 Hill’s Ch. 154, a limitation scarcely distinguishable from the foregoing was sustained. This decision was made in 1833, and based on two made in 1828. The bequest there was of certain slaves, to the testator’s son, to him and his heirs and assigns forever, and “ should he die without lawful issue, the said negroes shall return to my other surviving children.” The case of Ward v. Waller, 2 Spear, 786, decided in May, 1844, turned ultimately upon another point; namely, that the estate was intended to vest absolutely at a given period, though the general doctrine underwent discussion. Then came the case of Terry v. Brunson, 1 Richardson, 78, decided in December, 1844. The words of the will in that case were, “ I give and bequeath to my daughter Mary, one negro girl, to her and her heirs forever.” In a subsequent clause, it is added, “ if one or more of my children should die without issue, then and in that case, it is my will and desire, that his or her part or parts, should be equally divided between the surviving brethren.” This limitation was held not to be too remote, and that the sister of Mary, who survived her, was entitled to the slave and her increase. No difference is perceived between this case and the present, unless in the use of the word surviving, as indicating the period at which the limitation was to take effect. If in this case, the property is to go to the brothers, the intention is equally manifest, as if the word surviving had been inserted, and if in the one case, the limitation over was valid, it seems to us, it must be equally so in the other.
It must be admitted however, that the point cannot be regarded as free from difficulty. The case of Lemacks v. Glover et al. 1 Richardson, 141, was decided in January, 1845. The words of the will there were, “in case my son James should die under age, or before marriage, I then give and bequeath two negroes to William Walter; the rest and residue of my personal estate, I leave the use of to my sister Jane Glover, *70 and after her death I give and bequeath the same to the heirs of her body, to them and their heirs and assigns forever.” The circuit court decided that the words, “ heirs of the body” in this will were words of purchase. On appeal, the court, consisting of ten judges, was equally divided, and the judgment of the circuit court thus affirmed. It is to be observed, that the words of the will in this case, are distinguishable in some degree from those in Terry v. Brunson, and in the case before us. The decision is the same, but the circumstances are such as to deprive the case of all claim to authority, and perhaps to shake the previous decisions. As however it does not overrule the case of Terry v. Brunson, we feel bound to follow it. No later case in that court has been found.
The cases heretofore decided in this court on this question cannot govern this, because we have to give effect to the law of South Carolina, as in the case of Carroll v. Renich, 7 S. M. 798, we followed the law of Tennessee. In the case of Kirby v. Calhoun, 8 S. & M. 426, which arose in this state, we obeyed our own statute. That statute prescribes a rule at once definite and certain; and the same, which, according to our view, the court of South Carolina in its later decisions, has prescribed for .the construction of wills in that state.
The principle of the decree in the court below is correct, and ■must be affirmed. The representatives of the deceased brother are probably entitled to no share, but as the bill admits their right and the decree in that particular is not complained of, we shall not disturb it. An account of the reasonable hires of the slaves, since they came into the possession of Charles S. N Newell, should be taken in the court below.
The cause must be remanded, that the terms of the decree of the court of .chancery, in regard to the division of the slaves may be carried into effect, and for the purpose of taking the account. The appellant should have credit for the support of any of the slaves not worth their maintenance, and for physician’s bills if any, to be deducted from the hires. The costs of the court below to be paid ratably by the complainants and the defendant Thomas Newell: the costs of this court by the appellant. Decree affirmed.